**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **DONALD STEVEN LOONEY,** | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 7:09-CV-126-O-KA |
| | ) | |
| **USA,** | ) | |
|     Respondent. | ) | |

**REPORT AND RECOMMENDATION**

Under the authority of 28 U.S.C. § 636(b) and Rules 8(b) and 10 of the Rules Governing Section 2254 Proceedings for the United States District Courts, this case was referred to the undersigned United States Magistrate Judge by Order of Reference (Docket No. 8)[1] for hearing, if necessary, and proposed findings of fact and recommendation for disposition.

**Factual Background**

On May 19, 2006, Donald Steven Looney was sentenced to an aggregate 548 months in prison and a five-year term of supervised release after a jury convicted him of conspiring to and possessing with the intent to distribute 50 grams or more of methamphetamine (Counts One and Two), and possessing firearms in furtherance of drug-trafficking crimes (Counts Three and Four), in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B), and 18 U.S.C. § 924(c)(1)(A)(i). Looney's conviction and sentence were affirmed on direct appeal by the Fifth Circuit Court of Appeals on June 23, 2008. *United States v. Looney*, 532 F.3d 392 (5th Cir. 2008). He did not seek certiorari

---

[1] Petitioner Looney's trial and conviction were in cause number 7:05-CR-05. References to documents in that file shall be cited herein as "CR Docket No. ___." Documents from this civil cause shall be cited herein as "CA Docket No. ___."

1

review. Looney timely filed his 2255 application on July 29, 2009. This is his first postconviction motion.

## Petitioner's Alleged Grounds

Looney alleges seven grounds for relief, all couched in terms of "ineffective assistance" of his trial and appellate counsel;

1. That his counsel failed to object to the "general charge" format of the verdict;

2. That his counsel failed to challenge the Court's response to a jury question;

3. That his counsel failed to assert "prosecutorial vindictiveness" in securing a superceding indictment and prosecution of the case;

4. That his counsel failed to challenge the indictment on double jeopardy grounds;

5. That his counsel failed to challenge the two-level upward adjustment of the guideline sentence for "organization" of the drug activities;

6. That his counsel failed to present or preserve a Rule 32 violation by the Court at sentencing;

7. That his counsel failed at the sentencing stage to assert that the Court erred by making an erroneous guideline calculation in violation of 18 U.S.C. §3553(a); and,

8. That his counsel failed to preserve and present on appeal that his sentences on the charges were "unreasonable."

## Standards of Review

The standards for review of ineffectiveness of counsel cases are well established and need not be recited herein. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *U.S. v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999); *Izaguiree v. United States*, Civil No. 7:10-CV-138-O (N.D. Tex. 2011, J. O'Connor). Furthermore, a petition under 2255 does not automatically require a hearing. *United*

*States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981). "When the files and records of a case make manifest the lack of merit of a section 2255 claim, the trial court is not required to hold an evidentiary hearing." *Id*.

## Discussion

### Form of Verdict

Donald Steven Looney, together with his wife, Mary Beth Looney, were each indicted, tried, convicted and sentenced on the same four separate criminal charges: Count 1 for Conspiracy to Possess with an Intent to Distribute a Controlled Substance (Conspiracy), Count 2 for Possession with an Intent to Distribute a Controlled Substance (Possession); Count 3 for Possessing a Firearm in Furtherance of a Drug Trafficking Crime incident to Count 1 (Firearms); and Count 4 for Possessing a Firearm in Furtherance of a Drug Trafficking Crime incident to Count 2 (Firearms).[2]

In four separate sections of his Charge to the Jury, the District Court set forth the essential elements of each of these four charged offenses.[3] Then in the form of the verdict for the jury's completion, the jury was given, as to each separate count, the choice to find each of the defendants "guilty" or "not guilty." Thus the verdict form itself was in the format of a "general verdict" as to each count and as to each defendant.[4] Nowhere in the verdict form was the jury given the opportunity to expressly determine and find any particular amount of methamphetamine that was involved in any of the counts.

Looney argues that a **fact finding** as to the amount of the methamphetamine involved in each predicate offense was necessary as a condition to the imposition of the enhanced penalties under 21

---

[2] Superceding Indictment, CR Docket No. 42.

[3] Jury Charge, CR Docket No. 109.

[4] Jury Verdict, CR Docket No. 110.

U.S.C. §§841(b)(1)(A)(viii) and that those fact findings must be found by the jury, not by the court. Looney complains that by using the court's chosen charge and verdict format, the jury was deprived of the opportunity to establish the **amount** of methamphetamine involved in each of the charges by each defendant. Having been thus deprived of a specific jury finding on the amount of methamphetamine, Looney asserts the court committed an *Apprendi/Booker*[5] error at the time of sentencing by only impliedly finding that the amount methamphetamine involved in each offense was in excess of the 150 gram threshold for the enhanced punishment the court assessed in calculating the guideline range the court used in sentencing Looney.

The simple answer to Looney's proposition is found in the *Mares/Whitfield/Johnson*[6] line of cases. While the court in *Booker*, following its rationale in *Apprendi*, voided that the mandatory provision of the Sentencing Reform Act, it saved the statutory guideline sentencing scheme by holding that the sentencing guidelines, though mandatory for consideration by the sentencing court, were advisory only. Looney was tried in December of 2005, eleven months after the Supreme Court's *Booker* decision. Shortly following *Booker*, the Fifth Circuit together with numerous other circuits were faced with the issue of the effect of the holdings in *Booker* on the manner of implementing and applying the guidelines in criminal cases thereafter tried.

In *Mares*, the Fifth Circuit held that the Sixth Amendment does not preclude the court, in lieu of a jury, from finding all facts relevant for a guidelines determination and sentencing. "The

---

[5] *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) wherein the Court held "Other than the fact of a prior conviction, any fact that **increases** the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." See also, *Ring v. Arizona*, 536 U.S. 584 (2002); *United States v. Booker*, 543 U.S. 220 (2005).

[6] *United States v. Mares, 402 F. 3d 511 (5th Cir. 2005); United States v. Whitfield*, 590 F. 3d 325, 367 (5th Cir. 2009); *United States v. Johnson*, 445 F. 3d, 797 (5th Cir. 2006).

sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." Similarly, the Fifth Circuit in *Whitfield* stated, "In this case, the district court, sentencing long after Booker, clearly understood that the Guidelines were advisory only; therefore, it did not err in finding facts relevant to sentencing." And in *Johnson,* the court pronounced, "Relatedly, Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing. The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." *Mares/Whitfield/Johnson* is still the law in the Fifth Circuit.[7] Had the court expressly articulated its quantity finding at the sentencing hearing, the issue would be precluded under this line of cases. However, the court did not make that express finding.

Incident to its guilty findings on both Count 1 and Count 2 under the court's charge the jury necessarily determined as a precatory fact, *i.e.* that Looney was possessed 50 or more grams of methamphetamine. That is the only precatory fact as to quantity necessary for finding of guilt on each count. The Presentence Report[8] prepared by the Pretrial/Probation Services contains a detailed calculation of the guideline ranges for each of the counts. Incident to the Offence Description, the report extensively recites the quantities and percentages of purity of the methamphetamine for which Looney was "accountable." It reports that amount as 164.89 grams of actual methamphetamine. As to Counts 1 and 2 the report cites and discusses the Criminal History

---

[7] *See United States v. Olvera*, 2011 U.S. LEXIS 17595 (5th Cir. 2011);*United States v. Rodriquez*, 2010 U. S. App. LEXIS 21960 (5th Cir. 2010).

[8] Presentence Report, CR Docket No. 159.

Category and Total Offense Level of the defendant to arrive at a calculated Guideline Range. In making the Offense Level computations, the Officer used that 164.89 gram calculation to arrive at an Offense Level of 34 which prescribes a sentencing range of imprisonment of 188 to 235 Months. At the sentencing hearing, the District Court expressly referenced the guideline range from the Presentence Report (PSR).[9]  By his Statement of Reasons[10] as an adjunct to the judgment and sentence the District Court expressly adopted as the fact findings of the court, all facts set forth in the Presentence Report.  Further, the court adopted as the conclusions of the court all conclusions expressed by the PSR.

In arriving at the number of grams of actual amphetamine for which Defendant Donald Looney was responsible, the pretrial officer reported three separate occurrences where he was involved in the sale of methamphetamine on three separate dates (January 30, 2004, June 23, 2004 and August 24, 2004).  The quantities of meth involved in each of the sales were analyzed as to amount and purity and reported in "actual grams."  The total came to 164.89 grams.[11]  The pretrial service officer further reported on Looney's interview statement to Special Agent Gordon about trips to Arizona where Looney purchased a calculated total of 223.45 grams of actual methamphetamine. This total was not added to the 164.89 grams previously reported since to do so would have been mere surplusage.   There having been no objections to the quantity calculations of the PSR, nor to the guideline offense level calculations in said report, and there being adequate support in the PSR for the District Court's finding that Donald Looney was accountable for 164.89 grams of actual methamphetamine, I find that Looney was not prejudiced by the failure of his counsel to object to

---

[9]    CR Docket No. 146.

[10]   CR Docket No. 159, p. 28.

[11]   PSR, p. 5.

the court's verdict format. Objection at the time of sentencing would not have changed Looney's sentence which was at the very bottom end of the sentencing guideline. Therefore, Looney's counsel were not deficient in failing to challenge the form of the verdict on this "legally meritless basis." *United States v. Wilkes*, 20 F. 3d 651 (5th Cir. 1994).

### Jury Question

In his charge to the jury, the court explicated the elements of the firearm charge as follows:

> "Title 18, United States Code, Section 924(c)(1), makes it a crime for anyone to possess a firearm in furtherance of a drug trafficking crime.
> For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt.
> First: That the defendant committed the crime alleged in Count One. I instruct you that conspiring to distribute 50 grams or more of methamphetamine is a drug trafficking crime; and
> Second: that the defendant knowingly possessed a firearm–to wit: a Ruger 9mm handgun, Model P94DC, bearing serial bumber *(sic)* 308-12955 or a Colt .25 caliber handgun, bearing serial number 105998–in furtherance of the defendant's alleged commission of the crime charged in Count One.
> To prove the defendant possessed a firearm "in furtherance," the government must prove that the defendant possessed a firearm that furthers, advances, or helps forward the drug trafficking crime."[12]

During the course of their deliberations the jury sent out a written note inquiring:

> "Does having a firearm to defend a drug trafficking business constitute furthering, advancing, or help to forward the drug trafficking business?"

After consultation with counsel, the court returned a written reply, as follows:

> "This is a question for you to decide based upon the evidence which you have heard and the instructions which you have been given."

Looney asserts that the his trial counsel should have objected to the court's response to the jury's question regarding the scope of the word "furtherance" as used in the court's jury charge

---

[12] CR Docket No. 109, p.9-10.

defining the factual elements of the firearms offenses and that his appellate counsel likewise failed to raise this pint on direct appeal. Relying on the Fifth Circuit's own Pattern Jury Instructions for gun crimes charged under 18 U.S.C. §924(c), Looney's premise to this assertion is that the phrase "in furtherance" of a drug trafficking offense as used in necessarily requires further definition or explanation beyond that given by the court. Specifically, Looney urges that some element of "active employment" of the weapon in some manner (in lieu of mere possession of it) is a requisite to the "furtherance" of the predicate offense. Thus, he opines that court committed prejudicial error in failing to properly instruct the jury in his response to their written question that the term "in furtherance" meant "active employment" of the firearm such that his counsel was derelict in his duty to object and preserve the error. This very premise has been rejected by the courts on numerous occasions.

In the definitive case of *United States v. Ceballos-Torres*, 218 F. 3d 409 (5th Cir. 2000), the Fifth Circuit laid this issue to rest. The court framed the question before it, "The central question before us is what it means to 'possess a firearm in furtherance' of a drug trafficking crime" In thoroughly analyzing the statute and the legislative history behind its numerous revisions, the court concluded by opining, "Thus, firearm possession that furthers, advances, or helps forward the drug trafficking offense violates the statute." The *Ceballos* decision applied this dictionary definition of "furtherance" to the language of the statute and determined that it required no further definition or elucidation.[13] This very language from *Ceballos* was adopted by Judge Buchmeyer in his charge to the Looney jury. His response to the jury question was the proper response. Therefore, Looney's

---

[13] On other occasions the 5th Circuit has visited this same issue and has reached the same conclusion and applied the same elements. *United States v. Zamora*, 2011 U.S. App LEXIS (2011); *United States v. Young*, 2009 U.S. App LEXIS 17347 (2009) ; *United States v. Flores*, 2009 U.S. App. LEXIS 17729 ( 2009); *United States v. Rose*, 2009 U.S. App. LEXIS 24473 (2009).

counsel were not deficient in failing to challenge the court's response to the jury's question on this "legally meritless basis." *Wilkes*, *supra*.

Prosecutorial Vindictiveness

Latching on to the Court of Appeals' language in its decision on his direct appeal,[14] Looney argues that vindictiveness motivated the Government's "acquiring the superceding indictment" to enhance Looney's sentencing exposure by carving two offenses out of one and enhancing each with the same firearms. Citing *Blackledge v. Perry,*[15] Looney invokes a presumption of prosecutorial vindictiveness merely from the disparity between the two charges in the original indictment[16] and the four separate charges in the superceding indictment.[17] The Government responds by invoking *Bordenkircher v. Hayes*[18] and *United States v. Goodwin,*[19] which hold that due process does not

---

[14] CR Docket No. 153, p. 9, "We do not question the authority—or the wisdom—of Congress's decision to punish severely individuals who possess weapons in furtherance of drug-dealing. Nor do we in any way minimize the seriousness of Ms. Looney's offenses. Moreover, there is nothing legally improper about the prosecutors' charging decisions with respect to Ms. Looney, nor about the practice of confecting an indictment that would provide for the largest mandatory sentence. Nevertheless, we must observe that the power to use § 924(c) offenses, with their mandatory minimum consecutive sentences, is a potent weapon in the hands of the prosecutors, not only to impose extended sentences; it is also a powerful weapon that can be abused to force guilty pleas under the threat of an astonishingly long sentence."

[15] 417 U.S. 21 (1974).

[16] CR Docket No. 1, Original Indictment charging in Count 1-Possession with Intent to Distribute and in Count 2-Possession of Firearm in Furtherance of a Drug Trafficking Crime.

[17] CR Docket 109, Superceding Indictment charging in Count 1-Conspiracy to Possess with an Intent to Distribute and Count 2-Possession of Firearm in Furtherance of Count 1; and in Count 3-Possession with Intent to distribute and in Count 4- possession of a Firearm in furtherance of Count 3.

[18] 434 U.S. 357 (1982).

[19] 457 U.S. 368 (1982).

prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges if the defendant refuses to plead guilty to the original charges. To this Looney counters that the holdings in these cases are factually dependent upon the prosecutor having revealed his intention (or threat) during plea negotiations which Looney implies was not done in this case.

While some courts have recognized that a presumption of prosecutorial vindictiveness may arise where enhanced charges were brought after a defendant's successful post-trial appeal, such a presumption does not typically arise in pretrial circumstances.  In *Goodwin*, the Supreme Court expressly rejected the application of a presumption of vindictiveness arising from a modification of the charges against the defendant in the pre-trial context saying, "The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges **not in the public interest** that could be explained only as a penalty imposed on the defendant is so unlikely that **a presumption of vindictiveness certainly is not warranted**." *Goodwin* at p.384 (emphasis supplied). In *United States v. Krezdorn* decided by the 5th Circuit the year after *Goodwin*, the Court traced the full development of the defense of prosecutorial vindictiveness from its beginnings in the post-appeal cases of *North Carolina v. Pearce*[20] and *Blackledge*,[21] through the pre-trial plea negotiation case of *Bordenkircher*.  The Court arrived at the conclusion that in *Goodwin*, the Supreme Circuit had reconciled the conflicting principals of *Blackledge/Pearce* (that a presumption of vindictiveness arises in the post-trial context) versus *Bordenkircher* (that recognized the need for prosecutorial discretion in the pre-trial plea negotiation process) to reject any bright-line rule based upon when the modification of the charges was made, pre-trial versus post-trial.  While Justice Goldberg in his dissent argued for a bright-line distinction between pre-trial processes and post-trial

---

[20]   395 U.S. 711 (1969).

[21]   417 U. S. 21 (1974).

10

processes, the majority in the *en banc* decision found no such bright line, but instead established a new standard, saying:

> "If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in [*Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir. 1977), cert. denied, 434 U.S. 1049, 98 S. Ct. 897, 54 L. Ed. 2d 801 (1978)] that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to 'punish a pesky defendant for exercising his legal rights,' a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion."

This created a circumstance-based test for the presumption of vindictiveness in the post-trial/appeal context. The same circumstance-based test applies in the pre-trial context. In one of the first cases decided after the Supreme Court decision in *Goodwin*, approaching this issue, the Federal Circuit opined in *United States v. Meyer*, 810 F. 2d 1242 (1987):

> "We find the government's reading of *Goodwin* unpersuasive. The Supreme Court in *Goodwin* declined to adopt a per se rule applicable in the pretrial context that a presumption will lie whenever the prosecutor "ups the ante" following a defendant's exercise of a legal right. *See Goodwin*, 457 U.S. at 381 ("There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting."). But the Court also declined to adopt a per se rule that in the pretrial context no presumption of vindictiveness will ever lie. The lesson of *Goodwin* is that proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context. The rationale supporting the Court's teaching is that this sequence of events, taken by itself, does not present a "realistic likelihood of vindictiveness." *See id.* at 381-84. But when additional facts combine with this sequence of events to create such a realistic likelihood, a presumption will lie in the pretrial context. Several post-*Goodwin* courts have adopted this view. They have recognized, as we do today, that a presumption of vindictiveness will lie in the pretrial setting if the defendant **presents facts sufficient** to show a realistic

11

>likelihood of vindictiveness. *See United States v. Krezdorn*, 718 F.2d 1360, 1364-65 (5th Cir. 1983), *cert. denied*, 465 U.S. 1066, 104 S. Ct. 1416, 79 L. Ed. 2d 742 (1984); *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168-69 (9th Cir. 1982). The critical question in this case, as in all others, is whether the defendants have **presented such facts** – whether the defendants have shown that all of the circumstances, when taken together, support a realistic likelihood of vindictiveness and therefore give rise to a presumption. (Emphasis supplied).

In *United States v. Saltzman*, 537 F. 3d 353 (5th Cir. 2008) the Circuit Court addressed the issue of whether a presumption of vindictiveness should be applied in the pre-trial context where the prosecution re-indicted Saltzman with a felony charge after she withdrew her guilty plea to a misdemeanor charge. Saltzman challenged the re-indicted charges by motion in the trial court. In response to Saltzman's challenge, the prosecution offered no explanation of its motivation in bringing the additional charges. In the absence of any such explanation, the trial court applied a presumption of vindictiveness, and concluding that the Government had failed to rebut the presumption, dismissed the added charge. On appeal, the Court of Appeals after analyzing the *Pearce/Bordenkircher/Goodwin/Krezdorn* line of cases, determined that the trial court had erred in applying the presumption of vindictiveness, under the circumstances of that case, saying that "to determine whether the presumption of vindictiveness applies, 'the court must examine the prosecutor's actions in the context of the proceedings'"citing *Krezdorn*. Then distinguishing the facts of the case from *Meyer*, the court found that the defendant's withdrawal of her guilty plea to the originally charged misdemeanor offense "should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some other purpose than a vindictive desire to deter or punish," the *Saltzman* court declined to apply the presumption of vindictiveness.

So, what is the pre-trial context of the addition of new charges in the superceding indictment in this case? The modification of charges clearly occurred during the pre-trial period. The superceding indictment did not change the substantive possession charge or the associated original

firearms charge. It merely added a conspiracy charge with its associated firearms charge. There is nothing in the record as to the status or content of any plea negotiations. There is nothing in the record of any stated justification from the prosecution for the additional charges. The issue of vindictiveness was never raised at trial or on direct appeal.

The transcript of the suppression hearing reflects that there was more than one drug transaction by the defendants that preceded the arrest and search of their residence where additional drugs and the firearms were found. This indicates that the prosecution may have been aware at the outset that more than one possession charge or a conspiracy charge could be brought but were not In *United States v. Bryant*, 770 F.2d 1283 (5th Cir. 1985), the Court found that the prosecution's post-indictment discovery of the broader scope of the defendant's conduct negated any presumption of vindictiveness "but instead was the product of a legitimate law enforcement decision to bring the defendant to answer the additional charges." But, in *Saltzman* the Fifth Circuit explained that the presumption of vindictiveness cannot be predicated on the fact that "the government had full knowledge of the facts in the case, but did not include any of the additional charges in the original criminal complaint of indictment." *Saltzman* at 7. In *United States v. Warner*, 2008 U.S. Dist. LEXIS 110690, the District Court in Louisiana, following the 5th Circuit's lead in *Saltzman* rejected application of the presumption where no plea bargaining had occurred.

I find that Looney has failed to demonstrate any facts to support his bare assertion of prosecutorial vindictiveness. There is no support in the record before this Court for the proposition that the additional charges were brought by the prosecutor out of vindictiveness for the defendants' decision to insist upon a jury trial. I find that the circumstances of this case fail to support a realistic likelihood for prosecutorial vindictiveness. I conclude that Looney's bare allegation that the prosecutor engaged in vindictive prosecution because he did not plead guilty and insisted upon a

jury trial is not sufficient to support a vindictive prosecution claim.[22]  In the absence of any other proof that the superceding indictment was motivated by the prosecution's desire to punish or penalize the defendant for not pleading guilty to the initial charge, the mere disparity in the number of charges and the commensurate increase in the sentencing exposure, is not enough to have raised the issue at the time of trial or on appeal. There was, and is, no merit to Plaintiff's claim of prosecutorial vindictiveness. Plaintiff's counsel, both trial and appellate counsel, cannot have failed to render effective assistance by not raising this meritless claim. *Wilkes*, *supra*.

### Double Jeopardy

Distinguishing the Fifth Circuit's own ruling in his direct appeal that the *Privette* case[23] foreclosed his double jeopardy claim, Looney argues that the *Blockburger*[24] test should be applied to determine if the possession count was a "lesser included" offense to the conspiracy offense. If so, argues Looney, the bringing of the conspiracy count in addition to the possession count exposed Looney to "double jeopardy." Looney's argument proceeds from the premise that the possession count was a "lesser included" offense to the conspiracy offense.

In *Blockburger*, the Court was called upon to determine whether two sales of drugs by the defendant to the same person on two difference occasions were but one offense. Distinguishing the two sales, the Court stated that "...the test to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Finding that the drug statute forbade <u>sales</u> of drugs, the Court found that two sales were two separate offenses. Turning then to the question of whether a sale of drugs without a tax stamp was a separate offense from the

---

[22]   *See, United States v. Laxey*, 91 Fed. Appx. 939 (5th Cir. 2004).

[23]   *United States v. Privette*, 947 F. 2d 1259 (5th Cir. 1991).

[24]   *Blockburger v. United States*, 284 U. S. 299 (1932).

sale itself, the Court found that they were separate offenses since separate sections of the drug statute made both behaviors offenses saying, "The plain meaning of the provision is that each offense is subject to the penalty prescribed."[25]

Looney's argument here is precluded by the holdings in *Iannelli v. United States*.[26] and *United States v. Rodriquez*.[27] In *Iannelli* the Supreme Court established that "... the law has considered conspiracy and the completed substantive offense to be separate crimes."[28] After exploring the many cases so holding, the Court went on to observe, "The consistent rationale of this long line of decisions rests on the very nature of the crime of conspiracy. This Court repeatedly has recognized that a conspiracy poses distinct dangers quite apart from those of the substantive offense."

Looney's argument that the possession count is a "lesser included" offense to the conspiracy count is foreclosed by *Rodriquez* wherein the Court after analyzing the test under *Blockburger* and a new test under *Grady* [29] held that "...neither conspiracy nor possession is a lesser included offense of the other." Accordingly, Looney's trial and appellate counsel were not deficient for failing to raise this meritless issue. *Wilkes*, *supra*.

### Lack of Finding for Enhancement

Looney's complaint that his lawyers failed to challenge the upward enhancement of Looney's sentence for being an "organizer" is premised upon the assertion that the District Court failed to make an express finding that Looney was an "organizer." The PSR was prepared and submitted to the Court prior to sentencing of Donald Looney. No written objections to the PSR were filed by his

---

[25] *Id.* at p.305.

[26] 420 U.S. 770, 777 (1975).

[27] 948 F. 2d 914 (5th Cir. 1991) *cert. denied* 504 U.S. 987; *Accord, United States v. Hendricks*, 2005 U.S. Dist. LEXIS 4698 (N.D. Tex. 2005).

[28] *See also, United States v. Guthrie*, 789 F.2d 356, 358 (5th Cir. 1986).

[29] *Grady v. Corbin*, 495 U.S. 508 (1990).

attorney. Sentencing Guideline § 3B.1(c) provided for a two level adjustment to the base offense level for the defendant being a leader or organizer. In determining the guideline range for Donald Looney's sentence the PSR added the two level adjustment to the base offense level of 34 to establish the total offense level of 36 which proscribed a guideline range of 188 to 235 months per Zone D of the Sentencing Table.[30] At Mr. Looney's sentencing hearing Looney's attorney made no reference to the PSR guideline calculations but only asserted (by reference to Mrs. Looney's attorney's argument) that the stacking of offenses and punishments was impermissible and cruel and unusual. Looney also asserts that "the record reflects that the district court never actually adopted the PSIR (sic) to make it the binding document the government avers..."[31]

In pronouncing Looney's sentence at the sentencing hearing the Court expressly found and recited the applicable guideline range on each of the counts.[32] Those recitations were in exact accord with the relevant sections of the PSR. Further, the Court in its "Statement of Reasons" stated as follows:

> ""The Court **adopts** as the fact findings of the Court, all facts set forth in the Presentence Report...; and the Court **adopts** as the conclusions of the Court all conclusions expressed in the Presentence Report.... The Court recognizes the conclusions expressed in the Presentence Report and the Addendum to the Report, including the sentencing guidelines, are advisory only. In determining a sentence, the Court considered the advisory guidelines pursuant to *U.S. v. Booker*, 125 S.Ct. 738 (2005), as well as statutory concerns listed in 18 U.S.C. Section 3553(a)." [33] (Emphasis Supplied).

Additionally, in the formal judgment entered by the judge there is a recitation on page 3 that the sentence imposed was "[P]ursuant to the Sentencing Reform Act of 1984, but taking the Guidelines as advisory pursuant to *United States v. Booker*, and considering the factors set forth in

---

[30]   PSR. p. 15.

[31]   Movant's Traverse, CV Docket No. 10, p. 11-12.

[32]   Transcript of Donald Looney Sentencing, CA Docket No. 147, p.5.

[33]   Statement of Reasons, Docket No. 159, p.28.

18 U.S.C. Section 3553(c)...." Where a sentence imposed is within the guideline range, the Supreme Court does not require more from the sentencing judge than the recitation in the statement of reasons to create the presumption that the sentence imposed is reasonable. *Rita v. United States*, 551 U. S. 338 (2007). However, that presumption is not irrebuttable. Regardless of whether the sentence imposed is inside or outside the Guidelines range, the District Court may not commit significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range. *Gall v. United States*, 552 U. S. 38, 50 (2007).

The record clearly reflects that the District Court did not commit any of these errors. The sentence was within the guideline range; the guideline range was properly calculated by the court; the court did not treat the guidelines as mandatory and expressly so stated; the court considered the § 3553(a) factors and so stated; Looney has not demonstrated that the court based its sentence on clearly erroneous facts; and finally, the court did not deviate (up or down) from the guideline range, so no further explanation was necessary.

Looney seeks to go behind the sentencing procedure into the PSR to challenge the factual basis for the PSR's finding that Donald Looney was an "organizer." When attacking the reliability of information contained in the presentence report, the defendant must both object and submit evidence rebutting the report's facts.[34] Looney did neither. There was no objection written or oral. and Looney presented no evidence. There is adequate evidence in the record that several persons including a co-defendant acted under or pursuant to Looney's direction in making drug transactions.

I find that Looney simply has not presented any evidence to rebut the presumption that his

---

[34] *United States v. Vital*, 68 F. 3d 114, 120 (5th Cir. 1995).

17

attorneys represented him competently under the deferential standards of *Strickland*[35] and *Harrington*.[36]

### Rule 32 Violation

Federal Criminal Procedure Rule 32(i)(1)(A) provides as follows:

"**(i) Sentencing**.
  **(1) In General.** At sentencing, the court:
    **(A)** must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report:..."

Looney claims that the court committed a Rule 32 (i)(1)(A) violation by failing to engage in some sort of colloquy with the defendant and/or his counsel on the record at the sentencing hearing to confirm that the defendant and his counsel had received and reviewed the Presentence Report and had conferred with each other in regard thereto. At sentencing the court asked counsel for Looney "...are there any objections to the Presentence Report?" The court clearly gave counsel the opportunity to raise any issue he desired as to the existence, provisions, findings or conclusions in the report. He likewise afforded Looney himself that opportunity. And Looney did avail himself of the opportunity to address the court with his own views that the court had no jurisdiction over him.[37]

Looney does not assert or produce any evidence that he or his attorney did not receive the Presentence Report or that they did not review it or discuss it or understand it or object to it. Nothing appears in the record to the contrary. If some sort of written or oral statement of verification by the court is required under this Rule and its absence is error, the error is harmless. And failing such allegation or proof, Looney fails to demonstrate any prejudice under the second prong of the *Strickland* standards.

---

[35]    *Strickland v. Washington*, *supra*.

[36]    *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

[37]    CR Docket No. 146, p.2.

Erroneous Guideline Calculation and Unreasonableness

Looney's final two arguments arise out of the same premise-that the law requires the judge to expressly articulate each fact that the judge finds and relies upon in following the guidelines matrix to determine the guideline sentencing range and, within that range, the facts the judge finds and considers as to those factors raised in §3553(a). With respect to the guideline range determination and the application of the "organizer" two level addition and with regard to the drug quantity determination, Looney insists that the Court was required to make express findings and could not properly make those findings by adoption. With regard to the §3553(a) factors, Looney likewise asserts that those findings must be expressly articulated by the court and not found by adoption. While there is some support in the case law for this proposition where the court goes outside of the guidelines, either above or below the guideline range,[38] this is not the law where the sentence falls within the guideline range.[39] I conclude that neither Looney's trial counsel's nor his appellate counsel's representation fell below the *Strickland* standard nor caused Looney any prejudice. Had these issues been raised at time of sentencing when they should have, the same sentence would have been imposed by the court.

Recommendation

Based upon the foregoing, I recommend to the District Court that Donald Steven Looney's Motion to Vacate be DENIED.

Executed this 1st day of August, 2012.

Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

---

[38]     *Gall v United States*, supra.

[39]     *United States v. Vital*, supra.

<u>Standard Instruction to Litigants</u>

       A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996